<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YURI TRAISMAN, | Civil No.: 19-cv-11045 (KSH) (CLW) |
| *Plaintiff*, | |
| v. | |
| BORIS KHMELNITSKY a/k/a BORIS GRIGORIEVICH a/k/a BORIS KEMELMAN, a/k/a BORIS KHAN a/k/a BORIS KAN, a/k/a BORIS BANKER, LILIA KAN a/k/a LILIA KHAN, IAKOV KAN a/k/a YAKOV KAN and YANA VALETOVA, | <u>OPINION</u> |
| *Defendants*. | |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

## I.      <u>Introduction</u>

Plaintiff Yuri Traisman brought this suit alleging breach of contract and fraudulent transfers to recover approximately $1.1 million he claims is due to him as part of a failed real estate venture in Moscow, Russia.  Defendant Boris Khmelnitsky[1] moves to dismiss the complaint against him under Rules 9(c), Rules 12(b)(6), and 9(b), for failure to plead compliance with conditions precedent, failure to  state a claim upon which relief may be granted, and failure to plead fraud with particularity.  (D.E. 11.)  Defendant Yana Valetova moves to dismiss the complaint against her under Rules 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim upon which relief may be granted.  (D.E. 22.)

## II.      <u>Background</u>

According to the complaint, Traisman and Khmelnitsky met around 2005 at a social

---

[1] Khmelnitsky is alleged to use various aliases, and uses the surname "Kemelman" in his motion briefs. The Court uses "Khmelnitsky" in this opinion to match the complaint as well as the both sides' versions of the relevant contract, submitted with the briefing.

1

gathering.  (D.E. 1-1, Compl. ¶ 16.)  Both were interested in pursuing business opportunities in Russia.  (*Id.*)  Khmelnitsky's connections in Russia, particularly in the banking world, were attractive to Traisman.  (*Id.* ¶¶ 17-18.)  Traisman, for his part, had experience in developing shopping centers and had a friend, Gennady Kuryakov, who owned a "well-situated" parcel of land in Moscow.  (*Id.* ¶ 19.)  Succinctly, "Khmelnitsky had access to financing, and Traisman had access to key real estate."  (*Id.*)

Traisman and Khmelnitsky formed a joint venture in 2006 to develop a shopping center on the piece of land (the "Project").  (*Id.* ¶ 20.)  They discussed the Project during "frequent meetings" at locations in New Jersey, including "various Barnes & Noble stores in northern New Jersey and over dinners at various restaurants."  (*Id.* ¶ 21.)  According to Traisman, these discussions produced a "verbal agreement that, as joint venturers and partners, they would form a holding company for the Project, would invest monies in the Project, and would share in all profits, costs, and losses," and that Kuryakov would be brought in as a minority partner.  (*Id.*)

Around 2006, Traisman, Khmelnitsky, and Kuryakov formed Sealand, LLC, a holding company for the Project.  (*Id.* ¶ 22.)  The directors were Traisman, defendant Iakov Kan (Khmelnitsky's father-in-law at the time, who allegedly acted as Khmelnitsky's proxy in his role as director), and Boris Goldberg, an associate of Kuryakov.  (*Id.*)  Traisman and Khmelnitsky were majority beneficial owners, and Kuryakov had a minority stake. (*Id.*)  Although Khmelnitsky was not on the board of Sealand, he was "deeply and directly" involved in its affairs and influenced it directly through Iakov Kan.  (*Id.* ¶¶ 23-24.)  Khmelnitsky avoided officially associating himself with Sealand, but also, the complaint alleges, held himself out as its agent.  (*Id.* ¶¶ 23, 26.)  He also hired four employees from another project of his that had failed. (*Id.* ¶ 27.)

The shopping center opened in 2009.  (*Id.* ¶¶ 28, 34.)  From 2007 to 2010, Traisman invested approximately 21.5 million rubles, Khmelnitsky 47.8 million rubles, and Kuryakov 10 million rubles in the Project.[2]  Sealand also entered into three secured loan agreements with Sberbank of Russia, a Russian state-owned financial institution with which, Traisman contends, Khmelnitsky has "substantial contacts."  (*Id.* ¶¶ 18, 30.)  Khmelnitsky arranged these loans through his contacts, and Traisman had no role in obtaining them.  (*Id.* ¶ 30.)  The loans resulted in a line of credit in an amount equivalent to $24.8 million being extended to Sealand.  (*Id.* ¶ 31.)

The loan was secured by a third-party guarantee that Khmelnitsky or one of his associates executed in Traisman's name.  (*Id.* ¶ 32.)  The guarantee was "negotiated and pushed through" by Khmelnitsky, and Traisman was not required to produce evidence of his financial condition. (*Id.*)  Traisman asserts that Khmelnitsky did not execute the guarantee himself to avoid Sberbank's scrutiny concerning his business dealings, and though he objected to Khmelnitsky that his name was on the guarantee, he was "strong-armed . . . into accepting this business arrangement as a necessary condition of obtaining much-needed financing."  (*Id.* ¶ 33.) Khmelnitsky also allegedly promised Traisman "that he would use his connections at Sberbank to ensure that the [g]uarantee was never enforced against Traisman, and that he would, somehow, in the future, 'remove' the [g]uarantee from Sberbank's loan file."  (*Id.*)

Although the shopping center was quickly rented out once it opened, profit was "elusive" due to pressure and "administrative 'fines'" from the Russian authorities and the economic downturn in 2008-2009.  (*Id.* ¶¶ 34-35.)  By 2010, Traisman was seeking buyers and investors, but found none.  (*Id.* ¶ 36.)

---

[2] The complaint alleges that these figures equated to $860,000, $1.9 million, and $400,000 in 2008 dollars.  (Compl. ¶ 29.)

In 2011, Traisman "escalated" the guarantee issue during his meetings with Khmelnitsky, requesting that the latter "in line with his status as co-venturer and partner, contractually relieve Traisman of some of the burden potentially imposed by the [g]uarantee." (*Id.* ¶ 37.)  Following negotiations during which each side was represented by Russian counsel, the parties entered into Agreement No. 01-P/SL-Tr. (the "Agreement"), under which Khmelnitsky agreed, in relevant part, to provide Traisman with 50% of amounts to be paid by Traisman, if necessary, to Sberbank under the guarantee. (*Id.* ¶¶ 37-40 (citing Agreement §§ 2.1, 2.2).)  Traisman and Khmelnitsky also agreed to reimburse 50% of each other's expenses related to dispute settlement, including attorneys' fees. (*Id.* ¶ 41 (citing Agreement § 3.3.9).)  Traisman agreed to transfer to Khmelnitsky a share of "various valuable ownership rights he may have or would have personally held, in Sealand's assets." (*Id.* ¶ 42 (citing Agreement § 2.4).).)

By 2013, Sealand could not service its debt to Sberbank, which filed suit in Moscow in October 2013, and Sealand filed for bankruptcy in Russia at Khmelnitsky's urging. (*Id.* ¶¶ 43-44, 46.)  It obtained a judicial declaration of bankruptcy from a Moscow court and the Project's assets were liquidated in an auction. (*Id.* ¶ 45.)  Traisman alleges that the auction was "marred by irregularities," including the receipt by defendant Yana Valetova of $100,000 from the sale, money that assertedly went to Khmelnitsky. (*Id.*)

In Sberbank's lawsuit against Sealand and Traisman, Traisman disputed the authenticity of the guarantees upon which Sberbank sued him, but a Russian court issued judgment in the bank's favor on October 7, 2014. (*Id.* ¶ 47.)  Traisman's appeals were unsuccessful. (*Id.*)  Amid the Russian proceedings, Sberbank also sued Traisman in the District of Connecticut—Traisman's jurisdiction of residence—to enforce "certain guarantees of Sealand's debt, which Traisman denied ever signing." (*Id.* ¶ 48.)  Relying on the preclusive effective of the Russian

judgment, the district court entered summary judgment in Sberbank's favor in December 2015, a judgment that was partially reversed and remanded in April 2017; ultimately, the case was settled in March 2018.  (*Id.* ¶¶ 49-50.)

Throughout the Russian and U.S. litigation, Traisman, himself and through counsel, "repeatedly demanded that Khmelnitsky honor his obligation under the Agreement."  (*Id.* ¶ 51, 54-55.)  Khmelnitsky made "some" payments to fund the litigation in Russia.  (*Id.* ¶ 51.)  In December 2014, he also paid $20,000 through Valetova to Traisman's counsel in the U.S. litigation to cover Traisman's legal expenses in that case.  (*Id.* ¶ 52.)  Khmelnitsky made all payments through others, and "at times disguised them as unrelated to the Project."  (*Id.* ¶ 53.)  He ultimately ceased all contact with Traisman and, through counsel, has denied being a co-venturer in Sealand.  (*Id.* ¶¶ 56-57.)  Traisman asserts that he has spent at least $2,278,867 in connection with the guarantee[3] and in disputes with Sberbank, and that Khmelnitsky is liable for at least half of that amount.  (*Id.* ¶ 75.)

Traisman asserts that despite being aware of his obligations to Traisman, Khmelnitsky has directed "substantial transfers" to Lilia Kan, his ex-wife, Iakov Kan, his former father-in-law, and Valetova.  (*Id.* ¶¶ 59-60.)  He further asserts that Khmelnitsky's divorce from Lilia was a "further attempt to isolate himself from the assets he transferred, which he continues to transfer to her, all of which assets could be attached or drawn upon to satisfy any judgment obtained by Traisman."  (*Id.* ¶ 61.)  He alleges that Lilia was involved in and had knowledge of Khmelnitsky's business dealings and that Iakov, Lilia's father, was regularly involved in effectuating transfers from Khmelnitsky to Lilia and himself received money from Khmelnitsky.

---

[3] The complaint alleges the existence of one guarantee, but uses the plural term "guarantees" in some paragraphs. For consistency, the Court will use the singular.

(*Id.* ¶¶ 62-64.)  Lilia and Iakov allegedly knew that the purpose of the transfers was to hinder, delay, or defraud Traisman.  (*Id.* ¶¶ 62, 65.)

Traisman similarly asserts that Khmelnitsky transferred substantial funds to Valetova, described in the complaint as a university student residing in New York and Khmelnitsky's girlfriend.  (*Id.* ¶ 67.)  He claims that she "had knowledge of and was involved in Khmelnitsky's business dealings, and was specifically aware of the U.S. Litigation" in the District of Connecticut, having effectuated the December 2014 payment to Traisman's attorneys in that litigation.  (*Id.* ¶ 68.)  She also received money from the Sealand liquidation as an alleged creditor.  (*Id.*)  As with Lila and Iakov, Traisman contends that Valetova knew that the transfers were to hinder, delay, or defraud him.  (*Id.* ¶ 69.)  All three allegedly allow Khmelnitsky to exercise control over and spend at his discretion the assets he transferred to them.  (*Id.* ¶ 70.)

Based on these allegations, Traisman sued Khmelnitsky, Lilia Kan, Iakov Kan, and Valetova in Bergen County Superior Court.  The six-count complaint alleged breach of contract by Khmelnitsky (count 1), unjust enrichment against all defendants (count 2), violation of the New Jersey Uniform Fraudulent Transfer Act (UFTA), N.J.S.A. §§ 25:2-25, -26, by Khmelnitsky (count 3) and by the remaining defendants (count 4), conspiracy to violate the UFTA by all defendants (count 5), and aiding and abetting Khmelnitsky's UFTA violation by Lilia and Iakov Kan and Valetova (count 6).  Khmelnitsky removed the action to this Court on April 24, 2019, on the basis of diversity jurisdiction. (D.E. 1, Notice of Removal.)  Traisman voluntarily dismissed Lilia Kan from the suit in June 2019.  (D.E. 9, 10.)  Of the remaining defendants, it does not appear Iakov Kan has been served, and he has not appeared in the action.[4]

---

[4] Although Traisman was authorized to serve Iakov Kan by alternate means (D.E. 18), no proof of service has been filed, and Kan has not appeared.  Traisman has not sought entry of default against him.

Khmelnitsky and Valetova have each moved to dismiss the complaint (D.E. 11, 22.) Khmelnitsky moves to dismiss count 1 for failure to allege compliance with a condition precedent contrary to Rule 9(c) and the remaining counts for failure to plead fraud with particularity contrary to Rule 9(b) or, alternatively, failure to plead plausible claims under Rule 12(b)(6). Valetova moves to dismiss the complaint against her for lack of personal jurisdiction and to dismiss counts 2, 4, 5, and 6 for failure to state a claim upon which relief may be granted.

### III.   **Khmelnitsky's Motion to Dismiss**

#### A.  Standards of Review

In determining whether a complaint states a cause of action sufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6), the Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "'[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements'" are all disregarded. *Id.* at 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citations omitted).

Rules 9(b) and 9(c) address pleading requirements for fraud claims and conditions precedent, respectively. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." In practice, this rule requires a plaintiff alleging fraud to "support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and

how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). *See also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (to meet particularity requirement, plaintiff must "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation").

Rule 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed," though denying the occurrence or performance of a condition precedent must be done with particularity.  Pleading the satisfaction of conditions precedent need not meet the plausibility standard.  *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112 (3d Cir. 2014).

### B.  Discussion

#### 1.  Breach of Contract Claim (Count One)

With respect to Traisman's breach of contract claim, Khmelnitsky argues that the Agreement required Traisman to make unanimous written decisions with him concerning aspects of Sberbank's demands and permitted him to refuse payment if that requirement was not satisfied.  (D.E. 14, Khmelnitsky MTD Br. 2.)  The Agreement also required Traisman to open an account for settlements under the Agreement within three days of the Agreement's signing. (*Id.* at 2-3.)  Khmelnitsky argues that these were conditions precedent and the complaint's failure to plead compliance with them requires dismissal of the breach of contract claim against him.

Traisman counters that he was not required to plead compliance with conditions precedent because (1) under Russian law, they are unenforceable, and (2) under New Jersey law, Khmelnitsky waived them and, in any event, his conduct excused Traisman from complying, and

pleading compliance with, them.  (D.E. 28, Pl.'s 1st Opp. Br. 4-12.)  Traisman also argues that

the contractual provision addressing the opening of an account is not a condition precedent.  (*Id.*

at 12-13.)

      "'A condition precedent is a fact or event occurring subsequently to the making of a valid

contract and which must exist or occur before there is a right to immediate performance, before

there is a breach of contract duty or before the usual judicial remedies are available.'"  *Sundholm*

*v. eSuites Hotels LLC*, 2014 U.S. Dist. LEXIS 151658, at \*21 (D.N.J. Oct. 27, 2014) (Thompson,

J.) (quoting *Moorestown Management, Inc. v. Moorestown Bookshop, Inc.*, 104 N.J. Super. 250,

262 (Ch. Div. 1969)).  Under Rule 9(c), it is sufficient to generally plead compliance with

conditions precedent.  The rule "only 'obliges the pleader to allege compliance with the contract

or the performance of any relevant conditions or to state that the performance or occurrence of

the conditions precedent was waived or excused,'" and is "designed, not to add to pleading

burdens, but 'to eliminate the detailed and largely unnecessary averments that resulted under the

common law procedure.'"  *Deluxe Bldg. Sys. v. Constructamax, Inc.*, 2013 U.S. Dist. LEXIS

126866, at \*15 (D.N.J. Sept. 5, 2013) (McNulty, J.) (quoting Wright & Miller, Federal Practice

and Procedure: Civil 3d §§ 1302-1303 at 324, 326)).

      On the present record, which includes dueling affidavits from Russian legal experts and

two different translations of the Agreement, it is unlikely the Court could resolve the substantive

issues Traisman raises in the context of a motion to dismiss.  *See In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (court may consider "*undisputedly authentic*

document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the document" (emphasis added)); *see also Mendonca & Partners, LLC v.*

*Baskaran*, 2016 U.S. Dist. LEXIS 91297, at \*5-6 & n.2 (D.N.J. July 13, 2016) (McNulty, J.)

(noting that failure of condition precedent or its ability to be excused presented "factual issues ill-suited to resolution on a motion to dismiss"); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 562 (D.N.J. 2002) (Simandle, J.) (movant's blanket assertion of counterparty's failure to satisfy condition precedent "call[ed] for consideration of facts extrinsic to the pleadings" and therefore was beyond the scope of a R. 12(b)(6) motion).

But the Court need not do so at this juncture anyway, because the complaint, as a threshold matter, does not meet Rule 9(c).[5]  With the exception of the provision relating to the opening of an account for settlements under the Agreement, Traisman does not contest that the Agreement imposed conditions precedent to his right to relief, or that that the complaint fails to plead compliance with them. He instead alleges that compliance should be excused or is futile. He makes these assertions not in the complaint but in his briefing, and "'[i]t is axiomatic that complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  Although Rule 9(c) does not place an onerous burden on a plaintiff, it still requires the pleading itself to address the satisfaction (or waiver) of conditions precedent.  The breach of contract claim will therefore be dismissed without prejudice.  *Accord Sundholm*, 2014 U.S. Dist. LEXIS 151658, at *22; *Deluxe Bldg. Sys.*, 2013 U.S. Dist. LEXIS 126866, at *13.

### 2.  Unjust Enrichment and UFTA Claims (Counts Two, Three, and Five)

The complaint also asserts a series of fraudulent transfer claims, primarily brought under the UFTA and one framed as a common law unjust enrichment claim.  Of the UFTA claims,

---

[5] Regardless of the substantive body of law that applies to the Agreement's interpretation and the enforceability of its provisions—which the parties dispute—the Federal Rules of Civil Procedure supply the relevant pleading standards. *Bank of Am., N.A. v. Westheimer*, 683 F. App'x 145, 148 n.9 (3d Cir. 2017) (federal court sitting in diversity applies federal procedural law).

counts 3 and 5, which assert a violation and conspiracy to violate the UFTA, respectively, are asserted against Khmelnitsky.

The UFTA aims to prevent a debtor from placing his property beyond the reach of a creditor. *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 475 (1999).  Section 25:2-25, under which Traisman's statutory claims are asserted, provides as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>    . . . .
>
>    (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. § 25:2-25.[6]  Whether a transfer amounts to a fraudulent conveyance under this provision involves two inquiries: first, whether the person making the conveyance "has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance," and second, whether that person transferred property with an intent to defraud, delay, or hinder the creditor, or without receiving reasonably equivalent value under circumstances that would trigger the debtor's insolvency (as set forth in § 25:2-25(b)(2)). *Gilchinsky*, 159 N.J. at 475 (citations and internal quotation marks omitted); *see also Pricaspian Dev. Corp. v. Martucci*, 759 F. App'x 131, 135 (3d Cir. 2019).

---

[6] "Creditor" is defined as "a person who has a claim."  "Debtor" is defined as "a person who is liable on a claim."  N.J.S.A. § 25:2-21.

Whether the transferor had the intent to evade creditors is evaluated by the presence of certain "badges of fraud," which are "circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent." *Id.* at 476. In addition to the eleven "badges of fraud" listed in the UFTA, N.J.S.A. § 25:2-26,[7] courts may consider any other factors relevant to the transaction, *Gilchinsky*, 159 N.J. at 477.

A claim asserting conspiracy to violate the UFTA requires "agreement to participate in a fraudulent transfer violating the Act and 'an overt act that results in damage.'" *Pricaspian*, 759 F. App'x at 136 (quoting *LoBiondo v. Schwartz*, 199 N.J. 62 (2009)).

Traisman's UFTA claims against Khmelnitsky are insufficiently pleaded to survive Rule 12(b)(6) dismissal. The complaint simply alleges that Khmelnitsky's co-defendants received funds directly or indirectly from Khmelnitsky and that those funds should have gone to Traisman. No facts are pleaded in support of the requirement that Khmelnitsky must have put beyond Traisman's reach an asset that would have been available to Traisman but for the conveyance. *See Gilchinsky*, 159 N.J. at 475. Indeed, the complaint provides no detail

---

[7] N.J.S.A. § 25:2-26 provides that "[i]n determining actual intent under [§ 25:2-25(a)] consideration may be given, among other factors, to whether:
   a. The transfer or obligation was to an insider;
   b. The debtor retained possession or control of the property transferred after the transfer;
   c. The transfer or obligation was disclosed or concealed;
   d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
   e. The transfer was of substantially all the debtor's assets;
   f. The debtor absconded;
   g. The debtor removed or concealed assets;
   h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
   i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
   j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
   k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."

whatsoever about the funds allegedly transferred from Khmelnitsky to his co-defendants, including when or whether they ever would have been available to pay Traisman.

With respect to the second element, the complaint lacks any factual allegations that Khmelnitsky made the alleged transfers without receiving equivalent value in exchange and intended or expected to incur debts beyond his ability to pay, as required for a claim based on N.J.S.A. § 25:2-25(b). Instead, it merely parrots the language of the statute, which is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). To the extent Traisman seeks to rely on N.J.S.A. § 25:2-25(a), the complaint also lacks sufficient factual allegations to permit a reasonable inference that Khmelnitsky acted with "actual intent to hinder, delay, or defraud" Traisman. Although Traisman contends that he has "alleged misconduct bearing [on] at least five" badges of fraud (Pl.'s 1st Opp. Br. 16), the allegations are, again, no more than conclusory legal statements. The conspiracy claim is likewise deficient; not only is the underlying fraud insufficiently pleaded, the complaint fails to plead any facts concerning an agreement among the defendants.

The claims against Khmelnitsky similarly do not satisfy Rule 9(b). The complaint's descriptions of Khmelnitsky's alleged transfers are vague, and lack dates, amounts, methods, and other specifics that would supply "precision or some measure of substantiation" of the fraud claims. *Frederico*, 507 F.3d at 200. (*E.g.*, Compl. ¶¶ 13, 65 (Iakov Kan "frequently" or "regularly" effectuated transfers from Khmelnitsky to Lilia Kan); *id.* ¶ 15 (Valetova received "substantial" funds from Khmelnitsky); *id.* ¶ 81 ("around the time" Khmelnitsky transferred his assets to co-defendants, he was contractually indebted to Traisman); *id.* ¶ 11 (alleging that "in no later than 2016" Khmelnitsky divorced Lilia Kan and has transferred funds to her thereafter)).

Traisman argues that Rule 9(b) must be relaxed where the facts are peculiarly within the defendant's knowledge or control. (Pl.'s 1st Opp. Br. 15.) Although this a correct statement of the law as far as it goes, even under a relaxed standard "pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989). Although all of the fraudulent transfer allegations are made on information and belief, the complaint is silent on the basis upon which Traisman grounds that belief.

Traisman does not independently address the unjust enrichment claim (count 2), instead merely asserting that it is adequately pleaded. It is not, for the reasons discussed above. "A cause of action for unjust enrichment requires proof that 'defendant[s] received a benefit and that retention of that benefit without payment would be unjust.'" *Goldsmith v. Camden County Surrogate's Office*, 408 N.J. Super. 376, 382 (App. Div. 2009) (citation omitted). In the absence of particularities concerning the transfers, it is not reasonable to infer that Khmelnitsky received any benefit which, if retained, would be unjust.

Khmelnitsky has sought dismissal of counts 2 through 6 in their entirety. Counts 4 and 6 are not asserted against him, but against Valetova and Iakov Kan, and count 2 is asserted against those defendants as well as against Khmelnitsky. Although Traisman, relying on authority from outside the Third Circuit, argues that Khmelnitsky lacks standing to seek dismissal of the claims not asserted against him, courts in this circuit have recognized that claims may be dismissed against non-moving defendants where the grounds asserted by moving defendants also apply to non-moving defendants. *See Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir. 2006). Although there is no proof in the record before the Court of service having been made upon Iakov Kan—

14

typically a prerequisite to *sua sponte* dismissal (*see Fish Kiss LLC v. N. Star Creations, LLC*, 2018 U.S. Dist. LEXIS 136147, at *33-34 (D.N.J. Aug. 13, 2018) (Simandle, J.)), but also necessary if Traisman ever intended to substantively prosecute his claims against Iakov Kan— here the remaining, served defendants have moved for dismissal and Traisman has had ample opportunity to address why he believes his claims, including those asserted against Iakov Kan, were adequately pleaded and should survive dismissal under Rules 12(b)(6) and 9(b). Those arguments are unpersuasive, and given that the claims against Iakov Kan for conspiracy and aiding and abetting rely on the same barebones allegations, they are appropriately dismissed as well. So too the unjust enrichment claim, which is wholly conclusory. In any event, because the dismissal will be made without prejudice, Traisman will have an opportunity to correct the deficiencies in his pleading with respect to both Iakov Kan and Khmelnitsky.

As to Valetova, the issue is moot because, as set forth *infra*, the complaint will be dismissed as to her for lack of personal jurisdiction.

**IV.    Valetova's Motion to Dismiss**

Valetova moves to dismiss the claims against her under Fed. R. Civ. P. 12(b)(2), arguing that the complaint fails to allege any contacts she had with New Jersey, much less contacts sufficient for the Court to exercise personal jurisdiction over her.[8]  Traisman counters that she "has had extensive contacts with New Jersey by wrongfully receiving funds from Khmelnitsky."  (D.E. 31, Pl.'s 2nd Opp. Br. 6.)  He relies solely on allegations in the complaint that, upon information and belief, Khmelnitsky transferred funds to Valetova, and that Valetova was an "effective proxy" for Khmelnitsky, a New Jersey resident, because she made a payment to Traisman's attorneys to

---

[8] Valetova also seeks dismissal for failure to state a claim, relying on Khmelnitsky's arguments in that regard. The Court's disposition makes it unnecessary to reach those arguments as applied to Valetova.

fund his litigation with Sberbank and received money from the post-bankruptcy liquidation of the Project.  (*Id.* (citing Compl. ¶¶ 5, 45, 59, 67-68).)

### A.  Standard of Review

Once a defendant challenges personal jurisdiction, it is plaintiff's burden to prove, by a preponderance of the evidence and with affidavits or other competent evidence, facts sufficient to establish personal jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992).  "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  If the plaintiff makes out a *prima facie* case of personal jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Carteret Sav. Bank*, 954 F.2d at 150 (internal quotation marks and citation omitted).

A federal court may exercise personal jurisdiction over nonresident defendants to the extent authorized by the law of the state in which it sits; in New Jersey, the long-arm statute provides for jurisdiction co-extensive with the limits of due process under the Fourteenth Amendment. *Carteret Sav. Bank*, 954 F.2d at 144-45.  Due process requires that the defendant have sufficient minimum contacts with New Jersey such that maintaining the suit "does not offend traditional notions of fair play and substantial justice."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Whether sufficient contacts exist is viewed through the lens of either general jurisdiction, meaning the defendant is subject to suit in the forum state with respect to all causes of action, or

specific jurisdiction, meaning that the defendants is subject to suit in the forum state because a sufficient connection exists between her contacts with the forum and the asserted cause of action. *O'Connor*, 496 F.3d at 317.  General jurisdiction requires continuous and systematic contacts with the forum state, while "[s]pecific jurisdiction permits the exercise of personal jurisdiction over [a] non-resident defendant only if the plaintiff's claims 'arise out of or relate to' the defendant's forum contacts.  *Miller Yacht*, 384 F.3d at 101.

### B.  Discussion

Here, although Traisman's brief does not expressly concede that the Court lacks general jurisdiction over Valetova, it makes no attempt to show that it exists or has been pleaded.  Nor does the complaint offer any grounds upon which the Court could conclude that Valetova's contacts with New Jersey were "continuous and systematic."

The issue, then, is whether specific jurisdiction lies, which involves a three-part inquiry: "[f]irst, the defendant must have 'purposefully directed . . . activities' at the forum," or purposely availed herself of "the privilege of conducting activities within the forum"; second, "the litigation must 'arise out of or relate to' at least one of those activities"; and "third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'"  *O'Connor*, 496 F.3d at 317 (internal citations omitted).

As previously noted, Traisman relies exclusively on the complaint allegations to support his position that Valetova is subject to suit here. Those allegations fall well short of demonstrating even a *prima facie* case of specific personal jurisdiction; indeed, they fail at the first step of the inquiry as there is no indication that Valetova directed any activities at New Jersey.  Nothing in the complaint suggests a "deliberate targeting" of the state by Valetova or that she availed herself

of any privileges of conducting activities here.  *See O'Connor*, 496 F.3d at 317.  To the contrary, it is alleged that Valetova, a New York resident, received funds *from* Khmelnitsky.  Traisman's reliance on Valetova's receipt of funds from Sealand's liquidation auction is unpersuasive; the bankruptcy proceedings that occasioned the auction took place in Russia, and there is nothing in the record to suggest that the auction itself occurred outside of Russia, or more to the point, that the auction or Valetova's receipt of funds from it had anything to do with New Jersey.

Traisman's position is, in substance, that Valetova had the requisite contacts with New Jersey because she had contacts with a New Jersey resident, Khmelnitsky.  But absent relevant connections with the *forum*, jurisdiction will not lie.  *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); *O'Connor*, 496 F.3d at 317 ("[C]ontacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself."); *Drayage Express, LLC v. Int'l First Serv. United States*, 2017 U.S. Dist. LEXIS 47999, at *15 (D.N.J. Mar. 29, 2017) (Wolfson, J.) (defendant's contract with New Jersey-based co-defendant insufficient to establish requisite contacts with New Jersey to support specific jurisdiction).  Even if connections with a forum resident can, under certain circumstances, permit an inference that the non-resident purposefully targeted the forum, it is not reasonable to so conclude here, where Khmelnitsky is alleged to be a resident of not only New Jersey, but also New York and Russia. (Compl. ¶ 8.)

Finally, the payment Valetova allegedly made in December 2014 to Traisman's attorneys relating to the litigation between Traisman and Sberbank does not change the calculus.  There is no allegation that the attorneys were located in New Jersey, and it would not be reasonable to so infer, given that the litigation was venued in Connecticut.  Without any proper basis to conclude

that Valetova purposefully directed any activities at New Jersey, it is unnecessary to proceed further in the specific jurisdiction analysis.

Traisman argues, in the alternative, that the Court should permit jurisdictional discovery and hold a hearing concerning, for example, bank accounts controlled by Khmelnitsky and any travel by Valetova to New Jersey. Jurisdictional discovery is typically permitted if "the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction]." *Drayage Express*, 2017 U.S. Dist. LEXIS 47999, at *20 (quoting *Metcalfe*, 566 F.3d at 336) (alteration in original) (internal quotation marks omitted).[9]  "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)) (alteration in original) (internal quotation marks omitted).  However, a plaintiff is not permitted to "'undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.'" *Id.* (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)).

Here, granting Traisman the opportunity to conduct jurisdictional discovery on the basis of the bare allegations in the complaint—allegations that do not connect Valetova to New Jersey at all—would be tantamount to permitting a fishing expedition.  This is particularly inappropriate given that Valetova is an individual.  *Cf. Metcalfe*, 566 F.3d at 336 (jurisdictional discovery "particularly appropriate" where defendant is a corporation); *Massachusetts Sch. of Law at*

---

[9] It is a plaintiff's claim of jurisdiction, not its substantive claim, that is the object of the "clearly frivolous" language. *See, e.g.*, *Metcalfe*, 566 F.3d at 336; *Massachusetts Sch. of Law at Andover v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). (*Cf.* Pl.'s 2nd Opp. Br. 7.)

*Andover v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("Where the defendant is an individual, the presumption in favor of discovery is reduced.").

Valetova's motion to dismiss for lack of jurisdiction will be granted, and the complaint will be dismissed with prejudice as to her.[10]

### V.   <u>Conclusion</u>

Khmelnitsky's motion to dismiss is granted, and the complaint will be dismissed without prejudice.  Traisman may file an amended complaint within 30 days.  Valetova's motion to dismiss for lack of personal jurisdiction is granted.  An appropriate order will issue.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date: June 1, 2020

---

[10] No party has argued for transfer, and it is in any event not apparent from the record where the Court could properly transfer the action even if it were inclined to do so *sua sponte*. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (court need not investigate on its own all other courts that might or could have heard case).